# Neely *v.* Philadelphia, Appellant.

212   551
222   1595
f224  1560
f224  1569

212   551
f39SC4211

*Road law—Streets—Deed—Dedication—Damages.*

A conveyance of land bounded by a public road or a street gives the grantee title to the middle of the road or street, if the grantor has title to it, and does not expressly or by clear implication reserve it.

A call for a street as a boundary which has been projected by a municipality, but not opened, does not ordinarily raise the presumption of dedication which will estop the owner from claiming damages when it is actually opened.

Where land is conveyed as bounded by a street which is plotted on the city plan, but not opened, the grantee takes the fee in the land bounded by the street and, by implication, acquires an easement over the bed of the unopened street, unless circumstances attending the conveyance and description or grant negative such implication.

Where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property and the other res gestæ of the transaction.

An owner of a large lot of land which included the bed of a plotted and unopened street conveyed by deed a fraction of an acre of this land. The starting point of the description of the land was definitely fixed on the side of the plotted but unopened street as a land mark, and by reference to an artificial point in the ground. The land was then described by courses which were given in degrees, and fractions of a degree, and by distances which were given in feet and inches and fractions of an inch. *Held*, that the grantee took no easement by implication over the plotted but unopened street.

Argued Jan. 24, 1905.  Reargued May 11, 1905.  Appeal,

No. 123, Jan. T., 1904, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1903, No. 3572, on verdict for plaintiff in case of Henry B. Neely, executor of Charles Blanchard, deceased, v. Philadelphia. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Appeal from report of viewers.

At the trial when James Lewis, a witness for plaintiff was under cross-examination, he was asked this question : " Q. You have heard read here two deeds, where Mr. Blanchard sold the portion of his property abutting on the bed of the street to Mr. Hancock, and he sold the portion in rear of that also, fronting on Glenwood avenue, and under the law, and under those circumstances, the bed of the street, as far as the title remained in Mr. Blanchard, was subject to an easement both of Mr. Hancock and Mr. Strong, their heirs and assigns. Now, I ask you under those circumstances, this piece of property being subject to an easement or right of way of the abutter, what is the value of that property in 1896 ? "

Objected to. Objection sustained. Exception for defendant. [1]

" Q. If the piece of property lying in the bed of Glenwood avenue belonging to the Blanchard estate ' were subject to the right of way of the abutters, Mr. Hancock and his heirs, as well as subject to the easement of the property adjoining it towards Twentieth street, what would have been the value in 1896 of this piece of ground? "

Objected to. Objection sustained. Exception for defendant. [2]

Similar questions were asked other witnesses ; and objections were sustained. [3--6]

Defendant presented, inter alia, the following point:

3. Under the facts of the case, the plaintiffs are entitled to recover only the value of the lot subject to the right of way or easement which· they gave their grantees, and they could not use it in such a way as to interfere with their right to have a front on Glenwood avenue. *Answer :* Refused. [9]

Verdict and judgment for plaintiff for $3,500. Defendant appealed.

*Errors assigned* were (1–6) rulings on evidence, quoting the bill of exceptions; (9) above instructions, quoting them.

*John H. Maurer*, assistant city solicitor, with him *George E. Fill* and *John L. Kinsey*, city solicitor, for appellant.— Where a deed describes land as bounded by a street which at the time is plotted but unopened, the grantee takes title in fee to the land as bounded by the street, and an easement only over the bed of the unopened street. The title to the bed of the street remains in the original holder: Whitaker v. Phœnixville, 141 Pa. 327; Gamble v. Philadelphia, 162 Pa. 413; Cole v. Philadelphia, 199 Pa. 464; Brooklyn Street, 118 Pa. 640; Hancock v. Philadelphia, 175 Pa. 124.

*Joseph deF. Junkin*, for appellee.—Where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property, and the other res gestæ of the transaction: Union Burial Ground Society v. Robinson, 5 Wharton, 18; Bellinger v. Union Burial Ground Society, 10 Pa. 135; Paul v. Carver, 26 Pa. 223; Cox v. Freedley, 33 Pa. 124; Trutt v. Spotts, 87 Pa. 339.

OPINION BY MR. JUSTICE MESTREZAT, June 22, 1905:

The questions involved in this case and our decisions, including those cited here by defendant bearing thereon, have been examined and discussed in the very recent case of Fitzell v. The City of Philadelphia, 211 Pa. 1 in an elaborate opinion by Mr Justice DEAN, and we, therefore, may omit a discussion of the legal principles applicable to this class of cases. There is but a single question in this case, and it is whether the grant by the executors of Charles Blanchard, deceased, to Joseph Hancock in 1887, contains an implied covenant of an easement over the strip of land in the bed of Glenwood avenue in front of the land conveyed to Hancock. The descriptive words in the grant to Hancock affecting the question presented here are as follows : " All that certain lot or piece of ground . . . . described according to a survey . . . . as follows, to wit: Beginning at a point on the northwest side of Glenwood

avenue as laid out on the city plan four feet southwest from the southwest corner of the brick office building owned by the Blanchard estate; thence on a line at right angles with Glenwood avenue northwest 210 feet to the right of way of the connecting railway; thence south fifty-eight degrees thirty-two minutes west 236 feet two and one-half inches to a point in the centre of Twenty-first street as laid down and confirmed on the city plans; thence extending along the centre of Twenty-first street laid down as aforesaid south eleven degrees twenty-one minutes west 286 feet three and one-eighth inches to a point in the intersection of the centre of Twenty-first street with the northwest side of Glenwood avenue, and thence extending along the northwest side of Glenwood avenue laid down as aforesaid north fifty-eight degrees and thirty-two minutes east 430 feet nine inches to the place of beginning, containing one and sixty-one one hundredths acres more or less."

When the conveyance to Hancock was executed and delivered, Glenwood avenue between Twentieth and Twenty-first streets had been plotted on the city plan and confirmed by the board of surveyors, but had not been opened as a street. At that time and prior thereto it " never had any existence except on paper." Blanchard's executor, the plaintiff, claims that the northern half of the bed of Glenwood avenue abutting the Hancock land and for which damages are claimed here, was not subject to the servitude of Hancock and his grantees, prior to the actual opening of the avenue, and that the damages must be assessed against the city free and discharged of such servitude. The court below so held and the city has appealed.

In the Fitzell case, Mr. Justice DEAN says: " Where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property and the other res gestæ of the transaction." He then adds: " This principle is recognized in Union Burial Ground Society v. Robinson, 5 Wharton, 18, and has never been doubted; many remarks have been made in subsequent cases as to other features of this case inconsistent with the judgment in that case, but the controlling principle has never been questioned." In Brooklyn Street, 118 Pa. 640, GREEN, J., delivering the opin-

ion says (p. 646) : " When a municipal government lays out streets upon the land of a private citizen, it is not the act of the owner in any sense, and hence there is no necessity for an implication of a covenant against the owner to give his land to the public without compensation, nor even to dedicate it to public use.   Why, then, shall these implications be made in a case where the street is laid out by municipal action and the owner does nothing whatever as to the public, and nothing as to his private grantee, except simply to refer, as matter of description in his grant, to a street laid out, but not opened, by public authority."   Mr. Chief Justice LEWIS speaking for the court in Paul v. Carver, 26 Pa. 223, says : " The paramount intent of the parties, as disclosed from the whole scope of the conveyance (granting lands situate on a street), and the nature of the property granted, should be the controlling rule."   In Union Burial Ground Society v. Robinson, 5 Wharton, 18, Mr. Justice KENNEDY delivering the opinion quotes from a Massachusetts case as follows : " If by the terms of the description the road is necessarily excluded, it is equivalent to an express declaration that no part of the road is intended to be conveyed ; and it is perfectly clear that the fee in the road cannot pass as appurtenant to the land adjoining."   He then adds : " What is here said is particularly applicable whenever the quantity of land conveyed is small, and its extent is described with great nicety ; as in all conveyances almost of city or town lots or parts thereof.   And in the present case the ground intended to be conveyed is described with remarkable, if not very unusual degree of nicety and minuteness, as if it were intended to preclude all possibility of including any more than came within the metes and bounds, as set out, not merely in feet and inches, but limited even to the very fraction of an inch."   In Cox v. Freedley, 33 Pa. 124, the conveyance was of land bounded by the side of the street and the contest was over the title to the bed of the street.   In the opinion it is said : " In deciding this question in favor of the plaintiff, we admitted that the intention of the parties was to control the construction of the deed. . . . The intention of the parties, as deduced from the language of the instrument, was the criterion of construction, and in making that deduction, the court would look at the circumstances in which the conveyance was made."

Applying these rules in interpreting the grant under consideration, it is clear that the parties intended to limit the conveyance to the land within the description, and to exclude the strip or piece covered by the northern half of Glenwood avenue as well as any implication of a right to an easement over it. Blanchard purchased of Blight a large tract of land and the starting point on the ground, given in the conveyance, is the intersection of the center line of Twenty-first street with the center line of Glenwood avenue, as the streets were laid down on the city plans. The first course extends eastward along the center line of the avenue which is the south line of the premises, giving to the grantee title to the one-half of the bed of the projected avenue. When, however, Blanchard's representatives convey to Hancock, they make the northwest side of the avenue the south line of the land granted, thereby retaining the title to the half of the bed of the avenue. This line is thirty feet north of the Blight line. The description of Hancock's land, it will be observed, begins, not on the street, but " on the northwest side of Glenwood avenue as laid out on the city plan four feet southwest from the southwest corner of the brick office building owned by the Blanchard estate." The starting point in the description of the land is, therefore, definitely fixed on the side of a plotted but unopened street as a land mark, and by reference to an artificial point on the ground. The land is then described by courses which are given in degrees and fractions of a degree and by distances which are given in feet and inches and fractions of an inch. To this minuteness in detail of description are added as boundaries the right of way of the connecting railway and the center of Twenty-first street. The quantity of land conveyed is not a lot or an indefinite amount of land, but a fixed and certain acreage of one and sixty-one one hundredths. This was carved out of a large tract of land which included the bed of the plotted and unopened street. In addition to these facts, there is another significant and material, if not controlling fact, that in describing the land granted, the center line of Twenty-first street is made the west line of the premises conveyed, thereby including in the grant the one-half of that street; and the northwest side, and not the center, of Glenwood avenue is made the northwest line of the premises, thereby excluding from the

grant the one-half of the avenue. We think also the evidence shows that at the time of the conveyance to Hancock, Twenty-first street was physically opened and in use by the public up to Glenwood avenue, thereby affording the owner of the premises an outlet to the city.

We think it clear that the description of the premises and the attending circumstances, the " res gestæ of the transaction," negative the implication of an easement over Glenwood avenue in favor of Blanchard's grantee of the Hancock land. It is difficult to see how a grantor could more effectively exclude such an implication than is done in the description in the deed from Blanchard to Hancock. The grantor took every precaution, except declining to make the grant, that any person could take to confine his grant to the limits designated in his deed, and to hold to the contrary would be to declare that the owner of land abutting on a street which is unopened and simply plotted on the city plan cannot, under any circumstances and by the use of any descriptive terms, convey it without an implied covenant that the grantee shall have an easement over the land in the bed of the street. Such is not the law of this commonwealth and is not supported by reason or precedent.

It may now be regarded as settled by our decisions that a conveyance of land bounded by a public road or street gives the grantee title to the middle of the road or street if the grantor had the title to it and did not expressly or by clear implication reserve it; that a call for a street as a boundary which has been projected by a municipality, but not opened, does not ordinarily raise the presumption of dedication which will estop the owner from claiming damages when it is actually opened; and that where land is conveyed as bounded by a street which is plotted on the city plan but not opened, the grantee takes the fee in the land bounded by the street and, by implication, acquires an easement over the bed of the unopened street, unless the circumstances attending the conveyance and description of the grant negative such implication.

In conclusion we may repeat, as pertinent here, what Mr. Justice DEAN says in the Fitzell case : " The city has appropriated 1888 square feet of plaintiff's land for a public street; assume that under the statute they cannot build upon it, since it was put upon the city plans and thereby swell damages, but

they have not lessened its value by private grant of an easement. Their damages are substantial and capable of compensation and on that basis they should be assessed."

The judgment is affirmed.