## Philadelphia Steel Abrasive Company *v.* Louis J. Gedicke Sons, Appellant.

Argued December 4, 1941.  Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Samuel J. Halpren,* for appellants.

*Edward T. Maguire,* of *McGee & Maguire,* for appellee.

OPINION BY MR. JUSTICE DREW, January 5, 1942:

Plaintiff, Philadelphia Steel Abrasive Company, over whose land a private siding runs from the main line of the Pennsylvania Railroad Company, brought this bill in equity to enjoin defendant, Louis J. Gedicke Sons, a partnership, from using the siding as an easement appurtenant to its property. From a decree granting the injunction, defendant appealed.

Philadelphia Sash - Weight Company, the common predecessor in title of both plaintiff and defendant, owned a piece of land in the City of Philadelphia into which a siding extended eastwardly from the railroad. In 1921 or 1922 one Perez leased part of this property for use as a scrap metal yard, and was permitted to haul his goods by wagon to the Company's loading platform. Before the end of 1922 Perez, at his own expense and

with his lessor's consent, extended the siding into the leased premises and used it in connection with his business. In October, 1925, Perez agreed to purchase, not the premises of which he was tenant, but the easterly portion of the Company's entire property, for the purpose of removing his business there. This easterly part, which now belongs to defendant, did not abut on the railroad, and Perez, again with the Company's consent, relocated the extension which he had added to the siding so that it extended into the tract which he was about to purchase. Thereafter he took title by a deed dated April 13, 1926, which contained the usual clause conveying appurtenances but made no specific reference to the siding. Perez used the siding and kept it in repair until February, 1930, when he lost his property to the mortgagee by foreclosure proceedings. Two months later it was sold to defendant, which continued to use and maintain the siding as Perez had done. In December, 1936, the Sash-Weight Company conveyed the remaining, or westerly, portion of its land to plaintiff, which on defendant's refusal to pay rent for the privilege of using the siding brought the present action.

At the trial of the case the learned Chancellor expressly found that the common owner had sold the tract to Perez knowing of his intent to use it for purposes connected with his business, that it had special value by reason of its access to a railroad, and that such access formed part of the consideration for the purchase price and was necessary and essential to the reasonable enjoyment and use of the land for any purpose other than farming. The Chancellor further found that the parties to the sale, knowing that there was no other means of access to the railroad, intended that the right to use the siding should pass as an appurtenant to the land sold and for its benefit. No exception to these findings was taken by plaintiff. The Chancellor, while stating in his adjudication that it clearly appeared from the testimony that the use of the siding was intended to be

granted, nevertheless held as a matter of law that an easement can never be implied in the case of a right of way for a private railroad siding, because such a way lacks the element of permanency. After the entry of the decree nisi, plaintiff sold its property to the Joseph Berliner Company, which agreed to accept title subject to the entry of the final decree. The court below, therefore, directed that the Joseph Berliner Company be substituted as use-plaintiff in place of Philadelphia Steel Abrasive Company.

The question for determination is whether on the severance of the two tracts an easement arose by implication. In order that an easement arise in such a case, the parties to the transaction must have so intended, and their intent is determined from the nature of the properties, from the circumstances surrounding the transaction, and from the inferences drawn from those circumstances: *Penna. Co. v. Philadelphia,* 318 Pa. 209, 216; *Liquid Carbonic Co. v. Wallace,* 219 Pa. 457, 460; *Neely v. Philadelphia,* 212 Pa. 551, 554; *Fitzell v. Philadelphia,* 211 Pa. 1, 5. Obviously the parties must intend to create a right with all the attributes of an easement. One of these attributes is permanency: *Becker v. Rittenhouse,* 297 Pa. 317, 326; *Francies' Appeal,* 96 Pa. 200, 210; *Adams's Appeal,* 7 W. N. C. 86, 87. Plaintiff argues that nothing in the instant case indicates that it was the intention of the parties at the time of the severance to create a permanent right to use the siding. Plaintiff asserts that before Perez bought the land now owned by defendant he was a tenant at will having a mere license to use the siding, revocable at the pleasure of the lessor. Admittedly a user which commences permissively is presumed to continue as such. See *Pribek v. McGahan,* 314 Pa. 529, 535. But when one who has been a tenant at will purchases the fee in property served by a railroad siding essential to his business, the natural inference is that the right which was formerly revocable is intended to become irrevocable and permanent. On the

question of permanence, we said in *Liquid Carbonic Co. v. Wallace,* supra, 460: " '. . . Before the grant, Wallace had laid out and opened upon the ground the road in question, and it was the only road by which it was practicable to have access to the land. The road was apparent on the ground, and there was nothing upon the ground to indicate that it was not intended to be permanent.' The natural inference from these facts would be that the road was intended to be permanent." From the facts found by the Chancellor in the instant case, we conclude that the presumption of continued permissive user has been rebutted and that the parties intended the right to be permanent.

Plaintiff further urges, however, that the standard of permanency required of an implied easement is that the right created shall be incapable of being destroyed by one other than the owner of the dominant tenement. We take plaintiff's argument to be that the possibility of some occurrence which would destroy the easement or render it valueless, such as the railroad's relocation of its line or withdrawal from business, gives rise to the inference that the right was not intended to be permanent. With this contention we do not agree. In the absence of any contrary indications the natural inference would be that the conditions relative to the operation of the railroad existing at the time of the severance would continue, and that the grant made by the common owner to defendant's predecessor in title was made in the light of this supposition. Hence it is unnecessary to consider whether such acts on the part of the railroad as plaintiff visualizes would have the effect of destroying the easement or rendering it valueless. Under the rule advanced by plaintiff no easement could ever arise by implication in any right dependent for its value upon acts performed by third parties, such as supplying water or disposing of sewage. Yet these rights have been the subject of an easement by implication: *Ormsby v. Pinkerton,* 159 Pa. 458; *Geissel v. Supplee,* 95 Pa.

Superior Ct. 358; *Dzmura v. Gyurik,* 41 Pa. Superior Ct. 398. And in *Carty's Appeal,* 5 W. N. C. 241, we affirmed a decree enjoining interference with an implied easement in a railroad siding.

We are, therefore, convinced that under circumstances such as are present in this case it is possible to imply an easement in a railroad siding. To the extent that this opinion is in conflict with *Nauman v. Treen Box Company,* 280 Pa. 97, that case is hereby overruled.

Decree reversed and bill dismissed, costs to be paid by plaintiff, Philadelphia Steel Abrasive Company.